UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:18-cv-275-FDW

| GIVONNO CARTER, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| vs. | ) | **ORDER** |
|  | ) |  |
| KENNETH LASSITER, et al., | ) |  |
|  | ) |  |
| Defendants. | ) |  |

**THIS MATTER** is before the Court on initial review of the Amended Complaint, (Doc. No. 6). Also pending is Plaintiff's Motion seeking preliminary injunctive relief, (Doc. No. 3). Plaintiff is proceeding *in forma pauperis*. (Doc. No. 12).

I. **BACKGROUND**

*Pro se* incarcerated Plaintiff filed a civil rights suit pursuant to 42 U.S.C. § 1983 along with four other inmates alleging, *inter alia*, that their forced participation in an RDU Program at Marion Correctional Institution violates their constitutional rights. (Doc. No. 1). The Complaint was so seriously deficient that the Court was unable to complete initial review. On May 15, 2018, the Court ordered Plaintiffs to file IFP applications and an Amended Complaint within 21 days. (Doc. No. 2). The Court cautioned Plaintiffs that failure to comply would probably result in dismissal. The Court also informed Plaintiffs that the filing of more than one Amended Complaint would probably result in the opening of separate § 1983 cases. Plaintiffs did not file a single Amended Complaint pursuant to the Court's instruction and the case was severed. (Doc. No. 7).

Plaintiff Carter names the following as Defendants in their official and individual capacities in his Amended Complaint: Director of Prisons Kenneth Lassiter, Marion C.I.

1

Superintendent Hubert Corpening, Case Manager/RDU Programmer Gregory Swink, Assistant Superintendent Donny Watkings, and RDU-Director Jenny Jenkins.

Construing the Amended Complaint liberally and accepting it as true, Carter was transferred to the RDU Program at Marion C.I. on May 4, 2017. He was forced to sign paperwork saying he volunteered to participate in the RDU Program and was threatened with disciplinary segregation if he refused. During the admission process, institution officials told Plaintiff Carter that he could not keep all his personal property which included mail literature, lyrics he wrote and other written work, a manuscript, legal material, religious material, hygiene items, books and magazines. He was not allowed to keep these materials and was not allowed to use the facility storage unit even though none of his property exceeded two cubic feet, which violates the DPS policy and procedure manual regarding inmate personal property. Plaintiff Carter's right to access the courts was violated because he was not allowed to keep needed legal material. He was not allowed to keep all his religious material he "needed and need." (Doc. 6-1 at 3). The RDU Program is committing embezzlement and fraud because the money for the RDU Program is not being used correctly. The incentives, privileges and resources for the RDU Program are not being provided, such as gain time and merit days via inmate work, reduction of STGs after required actions, minimum custody is not being made available, electronic tablets with email and other features are not being provided, and snacks for RDU program not being provided. The institution has a systemic error with regards to its classification information. Prison documents say that inmates are all on general population regardless of their actual status. The failure to provide accurate information about classification is fraud. The RDU Program is unconstitutional because the RDU segregation unit (known as RDU Program Non-Participant) inmates are not being allowed to keep all personal property to which they are legally entitled, people on long-term isolation are not being

2

given radios or newspaper, radios are being denied without due process; inmates are not being allowed to buy all the canteen to which they are supposed to have access like at other prisons, lights stay on for 18 to 20 hours per day, and the shower water is always cold. Institution officials are unprofessional in that they intentionally harm and interfere with mail, visitation and communications, they delay and withhold incoming and outgoing mail, they lose peoples' mail and property, the do not allow a lot of people to buy merchandise and material from outside the institution, the do not allow modified visits like other prisons (including extra time for family members who have traveled a far distance), they do not respond to request forms and grievances, they regularly find metal in the vent system and discipline inmates for it but they never check or clean the vents or allow inmates to sign cell inspection sheets, the officials are disrespectful and lazy and do not do all the work they are supposed to do, kitchen officials do not serve the required portions of food, and the food trays are unclean sometimes. When these matters are reported to officials they often go uncorrected. The officials use excessive force by using too much pepper spray and brutally beating inmates. Inmates are put on segregation/ long term isolation without due process with the justification that there is an investigation. RDU inmates are not allowed to see a classification review board yet they are kept in isolation for six months are more and officials do not tell inmates when they are supposed to get out of segregation. Plaintiff Carter seeks $250,000 in punitive damages and injunctive relief. (Doc. No. 11 at 6).

## II. PRELIMINARY INJUNCTION

"A preliminary injunction is an extraordinary remedy never awarded as of right." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 24 (2008) (citing Munaf v. Geren, 553 U.S. 674, 689-90 (2008)). A preliminary injunction is a remedy that is "'granted only sparingly and in limited circumstances.'" Micro Strategy, Inc. v. Motorola, Inc., 245 F.3d 335, 339 (4th Cir. 2001) (quoting

Direx Israel, Ltd. v. Breakthrough Med. Corp., 952 F.2d 802, 816 (4th Cir. 1991)).

To obtain a preliminary injunction, a movant must demonstrate: (1) that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. DiBiase v. SPX Corp., 872 F.3d 224, 230 (4th Cir. 2017) (quoting Winter, 555 U.S. at 20).

The typical preliminary injunction is prohibitory and generally seeks only to maintain the status quo pending a trial on the merits. See Pashby v. Delia, 709 F.3d 307, 319 (4th Cir. 2013). By contrast, a mandatory injunction "goes well beyond simply maintaining the status quo *pendent lite*, is particularly disfavored, and should not be issued unless the facts and law clearly favor the moving party." Taylor v. Freeman, 34 F.3d 266, 270 n. 2 (4th Cir. 1994) (quoting Martinez v. Matthews, 544 F.2d 1233, 1243 (5th Cir. 1976)). A mandatory injunction is warranted in only the most extraordinary circumstances. Id. (citing Wetzel v. Edwards, 635 F.2d 283, 286 (4th Cir. 1980)). Further, it is well established that "absent the most extraordinary circumstances, federal courts are not to immerse themselves in the management of state prisons or substitute their judgment for that of the trained penological authorities charged with the administration of such facilities." Taylor, 34 F.3d at 268; see Rogers v. Scurr, 676 F.2d 1211, 1214 (8th Cir. 1982) ("judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration.").

Plaintiff states in his "Affidavit" that he is being exposed to an unsafe and cruel environment at Marion C.I. He asks to be transferred to another facility until this lawsuit is concluded and the conditions are corrected because the conditions at Marion C.I. are "unlawful, unconstitutional, mentally torturous and humanly unbearable." (Doc. No. 3 at 2).

Plaintiff has failed to establish that he is likely to succeed on the merits or that he is likely

to suffer irreparable harm in the absence of preliminary relief. Therefore, his request for preliminary injunctive relief will be denied.

### III.     SCREENING STANDARD

"Section 1983 imposes liability on state actors who cause the deprivation of any rights, privileges or immunities secured by the Constitution." Loftus v. Bobzien, 848 F.3d 278, 284 (4th Cir. 2017) (quoting Doe v. Rosa, 795 F.3d 429, 436 (4th Cir. 2015)). To state a claim under § 1983, a plaintiff must allege that the defendant, acting under the color of law, violated his federal constitutional or statutory rights and thereby caused injury. Crosby v. City of Gastonia, 635 F.3d 634, 639 (4th Cir. 2011).

Because Plaintiff is a prisoner proceeding *in forma pauperis*, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). In its frivolity review, a court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). A complaint should not be dismissed for failure to state a claim "unless 'after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief.'" Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999)).

A *pro se* complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972); see also Smith v. Smith, 589 F.3d 736, 738 (4th Cir. 2009) ("Liberal construction of the

pleadings is particularly appropriate where … there is a *pro se* complaint raising civil rights issues."). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990). A *pro se* complaint must still contain sufficient facts "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007); see Ashcroft v. Iqbal, 556 U.S. 662 (2009) (the Twombly plausibility standard applies to all federal civil complaints including those filed under § 1983). This "plausibility standard requires a plaintiff to demonstrate more than a sheer possibility that a defendant has acted unlawfully." Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted). He must articulate facts that, when accepted as true, demonstrate he has stated a claim entitling him to relief. Id.

## IV. DISCUSSION

**(1) Claims on Behalf of Others**

To the extent that Plaintiff attempts to assert claims on behalf of others, these claims are denied because a prisoner cannot file a lawsuit on behalf of others. See Hummer v. Dalton, 657 F.2d 621, 635-26 (4th Cir. 1981) (a prisoner cannot act as a "knight-errant" for others); Oxendine v. Williams, 509 F.2d 1405 (4th Cir. 1975) ("it is plain error to permit [an] imprisoned litigant who is unassisted by counsel to represent his fellow inmates in a class action.").

**(2) Conditions of Confinement**

The Eighth Amendment prohibits punishments that "involve the unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 103 (1976) (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)). "It not only outlaws excessive sentences but also protects inmates from

6

inhumane treatment and conditions while imprisoned." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). The Constitution "does not mandate comfortable prisons, … but neither does it permit inhumane ones." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Rhodes v. Chapman, 452 U.S. 337, 349 (1981)). Thus, prison official must provide sentenced prisoners with adequate food, clothing, shelter, and medical care, and "take reasonable measures to guarantee the[ir] safety…." Hudson v. Palmer, 468 U.S. 517, 526-27 (1984); see Farmer, 511 U.S. at 832-34.

To establish a violation of the Eighth Amendment in the context of a challenge to conditions of confinement, an inmate must allege (1) a "sufficiently serious" deprivation under an objective standard and (2) that prison officials acted with "deliberate indifference" to the inmate's health and safety under a subjective standard. Wilson v. Seiter, 501 U.S. 294, 297-99 (1991). A sufficiently serious deprivation occurs when "a prison official's act or omission ... result[s] in the denial of the minimal civilized measure of life's necessities." Id. at 298 (citing Rhodes, 452 U.S. at 347).

Plaintiff claims that he has been placed in the RDU Program against his will, his personal property has been confiscated, canteen and outside purchases are restricted, lights stay on 18-20 hours per day, shower water is cold, visitation is restricted, food portions are small and food trays are sometimes unclean, officials are unprofessional and use excessive force, and there is metal in the vent systems that prison officials fail to correct.

The general allegations about the conditions of confinement are too vague and conclusory to proceed insofar as Plaintiff does not allege he has been personally subjected to them or that they created a substantial risk of serious harm to him. See Section IV(1), *supra*; see also Fed. R. Civ. P. 8(a)(2) (short and plain statement is required); Simpson v. Welch, 900 F.2d 33, 35 (4th Cir.

1990) (conclusory allegations, unsupported by specific allegations of material fact are not sufficient); Dickson v. Microsoft Corp., 309 F.3d 193, 201-02 (4th Cir. 2002) (a pleader must allege facts, directly or indirectly, that support each element of the claim).

The more specific allegations do not constitute a sufficiently serious and extreme deprivation of the minimum civilized measure of life's necessities as contemplated by the Eighth Amendment. See Mines v. Barber, 610 Fed. Appx. 838 (11th Cir. 2015) (affirming the dismissal of plaintiff's Eighth Amendment claim that he was deprived of property during a prison administrative search where he did not allege that the seizure caused him physical pain or created an unreasonable risk to his health or safety); Thomas v. New Mexico Corr. Dep't, 272 Fed. Appx. 727 (10th Cir. 2008) (prisoner's allegation that he was deprived of personal belongings does not rise to the level of an Eighth Amendment violation); Macon v. Rogers, 2006 WL 6198461 (E.D. Va. Sept. 21, 2006) (prisoner's inability to obtain certain food and other items from prison commissary or order them from another vendor did not violate the Eighth Amendment); Prophete v. Gilless, 869 F.Supp. 537 (W.D. Tenn. Nov. 15, 1994) (dismissing as frivolous prisoner's Eighth Amendment claim that food was being served cold and ran the risk of being contaminated); Stephenson v. Diggs, 2015 WL 9450611 (E.D. Va. Dec. 22, 2015) (dismissing for failure to state a claim prisoner's Eighth Amendment claim that having lights on 24 hours per day in solitary confinement adversely affected his sleep patterns). Therefore, Plaintiff's claims of cruel and unusual conditions of confinement are insufficient to proceed and will be dismissed.

**(4)** **Due Process**

The Fourteenth Amendment's Due Process Clause provides that no person shall be deprived of "life, liberty, or property, without due process of law." U.S. Const. Amend XIV. The first inquiry in any due process challenge is whether the plaintiff has been deprived of a protected

interest in property or liberty that was accomplished by state action. Tigrett v. The Rector and Visitors of the Univ. of Va., 290 F.3d 620, 628 (4th Cir. 2002); Stone v. Univ. of Md. Med. Sys. Corp., 855 F.2d 167, 172 (4th Cir. 1988). "Unless there has been a 'deprivation' by 'state action,' the question of what process is required and whether any provided could be adequate in the particular factual context is irrelevant, for the constitutional right to 'due process' is simply not implicated." Stone, 855 F.2d at 172.

**(A)** **Property**

Where a state employee's random, unauthorized act deprives an individual of property, either negligently or intentionally, the individual is relegated to his state post-deprivation process, so long as the State provides an adequate post-deprivation remedy. Hudson v. Palmer, 468 U.S. 517 (1984); Parratt v. Taylor, 451 U.S. 527 (1981), *overruled on other grounds by* Daniels v. Williams, 474 U.S. 327 (1986)). However, post-deprivation remedies do not satisfy the due process requirement where the deprivation complained of is effected pursuant to an established state procedure rather than a random, unauthorized action. Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982).

Under North Carolina law, an action for conversion will lie against a public official who wrongfully deprives an owner of his property by an unauthorized act. Gallimore v. Sink, 27 N.C.App. 65, 67, 218 S.E.2d 181, 182 (1975). North Carolina's post-deprivation remedies are adequate. N.C. Gen. Stat. § 143-291; see Wilkins v. Whitaker, 714 F.2d 4, 6 (4th Cir. 1983) (due process satisfied where North Carolina tort law provides an adequate avenue for relief for state prisoner).

Plaintiff appears to allege that his property loss was due to RDU rules that Defendants created and implemented that are contrary to DPS policy, rather than from a random, unauthorized

9

action. Therefore, this claim will be permitted to proceed.

**(B) RDU Program**

A plaintiff does not have a federally protected liberty interest in any particular housing or classification unless it exceeds the scope of his original sentence and imposes an atypical and significant hardship in relation to the ordinary incidents of prison life. See Sandin v. Conner, 515 U.S. 472 (1995); Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991) (*en banc*) ("[C]hanges in a prisoner's location, variations of daily routine, changes in conditions of confinement (including administrative segregation) and the denial of privileges … are necessarily functions of prison management that must be left to the broad discretion of prison administrators to enable them to manage prisons safely and efficiently.").

Plaintiff states that he has been placed in the RDU Program against his will, and that RDU inmates are put on segregation and are kept in isolation for six months or more without going before a classification review board and without being told when they are supposed to get out of segregation. Plaintiff complains generally about the RDU Program but does explain how the conditions of his confinement in that program have imposed on him an atypical and significant hardships in relation to the ordinary incidents of prison life. See, e.g., Allen v. Mitchell, 2018 WL 4494988 (W.D.N.C. Sept. 19, 2018). Therefore, this claim is too vague and conclusory to proceed and it will be dismissed.

**(C) Grievances**

"[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). A prisoner's "access to and participation in the prison's grievance process are not constitutionally protected…." Taylor v. Lang, 483 Fed. Appx. 855, 857 (4th Cir. 2012).

Plaintiff's general allegations that the grievance system at Marion C.I. is inadequate and that grievances go unanswered fails to state that any Defendant has violated Plaintiff's constitutional or statutory rights. Therefore, this claim will be denied.

**(5)** **Access to courts**

Inmates have a constitutional right to a "reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts" which a state may not abridge or impair. Bounds v. Smith, 430 U.S. 817, 821 (1977); Hudspeth v. Figgins, 584 F.2d 1345, 1347 (4th Cir. 1978). To make out a case of denial of access to the courts, the inmate cannot rely on conclusory allegations; instead, he must identify with specificity an actual injury resulting from official conduct. Cochran v. Morris, 73 F.3d 1310, 1316 (4th Cir. 1996). The injury requirement is not satisfied by any type of frustrated legal claim; the prisoner must demonstrate that his nonfrivolous post-conviction or civil rights legal claim has been frustrated or impeded. See Lewis v. Casey, 518 U.S. 343, 353 (1996). "Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." Casey, 518 U.S. at 355.

Plaintiff alleges that his right to access the courts was violated because he was not allowed to keep legal material. These vague and conclusory allegations are insufficient to state a claim for deprivation of access to the courts. Therefore this claim will be dismissed.

**(4)** **Free Speech and Religion**

The First Amendment states that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech…." U.S. Const. Amend I. The First Amendment applies to the states through the Fourteenth Amendment.

See Everson v. Bd. of Educ., 330 U.S. 1, 15 (1947). A prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system. Pell v. Procunier, 417 U.S. 817, 822 (1974); Pittman v. Hutto, 594 F.2d 407, 410 (4th Cir. 1979). Prison officials may impose restrictions on prisoners' rights if those restrictions are "reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987). In making this determination, a court considers the following factors: (1) whether the regulation is rationally connected to a legitimate and neutral governmental interest; (2) whether the inmate has an alternative means of exercising the constitutional rights; (3) the impact accommodating the inmate's asserted right would have on prison staff, prisoners, and resources; and (4) whether ready alternatives to the regulation exist. Turner, 482 U.S. at 89, 99. When a prison restriction infringes upon an inmate's First Amendment rights, the alleged infringement "must be evaluated in the light of the central objective of prison administration, safeguarding institutional security." Bell v. Wolfish, 441 U.S. 520, 547 (1979) (citing Jones v. N.C. Prisoners' Labor Union, 433 U.S. 119, 129 (1977)). Courts must accord prison administrators "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Bell, 441 U.S. at 547 (citations omitted).

**(A)  Religion**

To state a free exercise claim under the First Amendment, a plaintiff must allege facts sufficient to show that he held a sincere religious belief, and that the official action or regulation substantially burdened his exercise of that belief. Hernandez v. C.I.R., 490 U.S. 680, 699 (1989). A prison policy that substantially burdens an inmate's ability to practice his religion withstands a First Amendment challenge when it is "reasonably related to legitimate penological interests."

12

O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987) (quoting Turner, 482 U.S. at 89).

Plaintiff alleges that he was not allowed to keep all the religious material he "needed and need." (Doc. No. 6-1 at 3). This claim is insufficient to pass initial review because Plaintiff's vague and conclusory allegations fail to establish that he had a sincere religious belief or that the official action or regulation substantially burdened his exercise of that belief.

**(B)** **Mail**

As a general rule, prisoners have the right to both send and receive mail. See Thornburgh v. Abbott, 490 U.S. 401, 408 (1989); Pell v. Procunier, 417 U.S. 817 (1974). Restrictions on this right are valid if they are reasonably related to legitimate penological interests. Turner, 482 U.S. at 89. For instance, a prisoner's First Amendment interest in corresponding does not preclude prison officials from examining mail to ensure that it does not contain contraband. Wolff v. McDonnell, 418 U.S. 539, 576 (1974).

Plaintiff alleges that institution officials "commit [intentional and harmful interference with mail, visitation and communications]. Delaying, withholding incoming/outgoing mail, losing people mail…." (Doc. No. 6-1 at 7). These vague, conclusory, and general allegations fail to state a plausible First Amendment violation. He fails to allege that his mail was impacted or that such a loss was fairly traceable to any of the Defendants' actions. See generally Iwanicki v. Pa. Dep't of Corr., 582 Fed. Appx. 75 (3d Cir. 2014) (a single instance of interference with mail is usually insufficient to constitute a First Amendment violation); Oliver v. Powell, 250 F.Supp.2d 593 (E.D. Va. 2002) (dismissing claim about interference with mail because plaintiff failed to specify any defendants whose actions were traceable to an actual injury). Therefore, this claim will be dismissed.

13

**(8) Funding and Recordkeeping**

Plaintiff makes a number of miscellaneous allegations that the RDU Program is not being run properly, the funds for that program are being misused, and the records about inmate classification are incorrect.

Plaintiff fails to allege how any of the Defendants deprived him of a federal constitutional or statutory right and thereby caused injury. See generally Crosby, 635 F.3d at 639. Therefore, these claims will be dismissed.

**(9) State Law Claims**

The district courts have supplemental jurisdiction over claims that are so related to the claims over which the court has original jurisdiction that they "form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). A court may decline to exercise supplemental jurisdiction if: (1) the claim raises a novel or complex issue of state law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c)(1)-(4).

It appears that Plaintiff is attempting to raise claims of fraud and embezzlement under North Carolina law with regards to Defendants' alleged misuse of RDU Program funds.

The Amended Complaint has only passed initial review on Plaintiff's due process claim with regards to the alleged deprivation of his personal property. Plaintiff's North Carolina fraud and embezzlement claims would substantially predominate over the federal claim. Therefore, the Court declines to extend supplemental jurisdiction over Plaintiff's North Carolina law claims at this time.

## VI. CONCLUSION

The Amended Compliant will be permitted to proceed on Plaintiff's due process claim with regards to the alleged deprivation of his property. The remaining § 1983 claims will be dismissed for failure to state a claim upon which relief can be granted and the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims. Plaintiff's Motion seeking preliminary injunctive relief is denied.

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's claim that he was deprived of property without due process survives initial review under 28 U.S.C. § 1915, but the remaining claims are dismissed for failure to state a claim upon which relief can be granted pursuant to § 1915(e)(2)(B)(ii).

2. Plaintiff's Motion seeking preliminary injunctive relief, (Doc. No. 3), is **DENIED.**

3. The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims.

4. **IT IS FURTHER ORDERED THAT** Clerk of Court shall commence the procedure for waiver of service as set forth in Local Rule 4.3 for Defendants **Lassiter, Corpening, Watkings, Jenkins,** and **Swink** who are current or former employees of NC DPS.

Signed: November 6, 2018

Frank D. Whitney
Chief United States District Judge